**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE | : | Case No. 07-11047 (CSS) |
| HOLDING, et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| _____ | : | |
| TRIAD GUARANTY INSURANCE | : | Adv. Case No.: 09-52193 (CSS) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOME MORTGAGE | : | |
| INVESTMENT CORP,: AMERICAN CORP., | : | |
| AHM SV, INC. (f/k/a AMERICAN HOME | : | |
| SERVICING, INC.); COUNTRYWIDE BANK, | : | |
| FSB, f/k/a COUNTRYWIDE BANK, N.A. | : | |
| n/k/a BANK OF AMERICA, N.A.; | : | |
| COUNTRYWIDE HOME LOANS, INC.; | : | |
| COUNTRYWIDE HOME LOANS SERVICING | : | |
| LP n/k/a BAC HOME LOANS SERVICING | : | |
| LP; FEDERAL HOME LOAN MORTGAGE | : | |
| CORPORATION; and CERTAIN | : | |
| SECURITIZATION TRUSTS IDENTIFIED IN | : | |
| EXHIBITS D AND E FOR THEMSELVES AND | : | |
| AS A REPRESENTATIVE OF A CLASS | : | |
| CONSISTING OF ALL OTHERS SIMILARLY | : | |
| SITUATED AS OWNERS OF MORTGAGE | : | |
| LOAN INSURANCE ISSUED BY TRIAD | : | |
| GUARANTY CORP. TO AMERICAN HOME | : | |
| MORTGAGE, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**OPINION[1]**

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." FED. R. BANKR. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

YOUNG CONAWAY STARGATT &
TAYLOR, LLC
Sean M. Beach
Sharon Zieg
Erin Edwards
100 North King Street
P.O. Box 391
Wilmington, DE  19899

-and-

HAHN & HESSEN LLP
John P. McCahey
Mark S. Indelicato
Christina J. Kang
Joseph Orbach
488 Madison Avenue
New York, NY  10022

Co-Counsel to the Plan Trustee
And Counsel to the Debtors

DLA PIPER LLP
Stuart M. Brown
Denise S. Kraft
R. Craig Martin
919 N. Market Street, Suite 1500
Wilmington, DE  19801

Counsel for Countrywide Bank, FSB
and Countrywide Home Loans

WOMBLE CARLYLE SANDRIDGE
 & RICE
Kevin J. Mangan
222 Delaware Avenue, Suite 1501
Wilmington, DE  19801

Richard T. Rice
Womble, Carlyle, Sandridge & Rice
One West Fourth Street
Winston-Salem, NC  27101

Garth Gersten
Womble, Carlyle, Sandridge & Rice
2530 Meridian Parkway, Suite 400
Research Triangle Park, NC  27713

Counsel for Triad Guaranty
Insurance Corp.

COZEN & CONNOR
Mark E. Felger
Barry M. Klayman
1201 N. Market, Suite 1400
Wilmington, DE  19801

Counsel for Plaintiff
Triad Guaranty Insurance Corp.

SAUL EWING LLP
Mark Minuti
222 Delaware Avenue, Suite 1200
Wilmington, DE  19899
        -and-
Nicholas J. Nastasi
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA  19102

Counsel for the Trusts

Date:  August 27, 2012
Sontchi, J.

## INTRODUCTION

Before the Court are several motions to dismiss an amended complaint filed by Triad Guaranty Insurance Co. ("Triad"), the non-debtor plaintiff. Through the Amended Complaint, and based upon non-bankruptcy law, Triad seeks to rescind insurance obligations against a defensive class that consists of all current "owners" of Triad-insured loans.

This Court will dismiss Triad's post-confirmation action. As more fully detailed below, Triad has failed to provide sufficient reason to conclude that Triad's action is integral to the restructuring process. More specifically, Triad has failed to meet its burden to demonstrate a sufficient connection—a "close nexus"—between Triad's post-confirmation rescission action and the Debtors' Plan or Proceeding. In addition, Triad's action arises solely under state law, independent of the bankruptcy petition. The class action does not "arise in" the bankruptcy or "arise under" the Bankruptcy Code ("Code"). On the face of the Amended Complaint, this Court does not have jurisdiction over Triad's dispute with the putative defensive class.

## AUTHORITY TO DETERMINE JURISDICTION

In response to an adversary proceeding initiated by Triad in a case before this Court, the Defendants submitted motions to dismiss for lack of subject-matter jurisdiction under Rule 12 of the Federal Rules of Civil Procedure.[2] In such instances, a bankruptcy court has the authority to determine whether it has subject-matter

---

[2] Fed. R. Civ. P. 12, which is generally applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7012.

jurisdiction over the adversary proceeding.[3] Accordingly, this Court may determine whether to dismiss Triad's action for lack of subject-matter jurisdiction.

## BACKGROUND

American Home Mortgage, Inc. ("AHM") and several affiliates (collectively, "Debtors") filed for bankruptcy in August 2007. After AHM's plan was confirmed in February 2009, Triad filed a complaint with this Court. Subsequently, Triad amended the complaint to add related claims (the "Amended Complaint"). Through this action, the "single question" Triad seeks this Court to determine is whether Triad can terminate its insurance obligations against *non-debtors* under *non-bankruptcy law*.[4] To obtain relief against non-debtors, Plaintiff asks the Court to certify a class of these non-debtors.

### A.    Factual Background

Before filing for bankruptcy protection with this Court (the "Petition Date"), AHM was involved in the origination of mortgage loans. Triad Guaranty Insurance ("Triad"), a private mortgage insurer and plaintiff in this action, offered mortgage default insurance on many loans originated by AHM.

---

[3] *See The Fairchild Corp. v. State of New York* (*In re The Fairchild Corp.*), 425 B.R. 525, 528 (Bankr. D. Del. 2011) (citations omitted); *Chicot County Drainage Dist. v. Baxter State*, 308 U.S. 371, 60 S. Ct. 317, 84 L.Ed. 329 (1940) (explaining a federal court has authority to determine whether it has jurisdiction over a dispute)).

[4] Hr'g Tr., at 25 (March 9).

By contract (the "Master Policy"), Triad and AHM agreed that AHM would perform initial risk assessment functions.[5]  However, the Master Policy indicates that Triad maintained ultimate control over the decision to issue insurance certificates on each loan.[6]  If the risks were acceptable to Triad, Triad issued insurance certificates protecting current and future loan owners against borrower default.[7]  Under the Master Policy, Triad also agreed that the loans could be transferred to third-parties and Triad's obligations would follow those loans.[8]  If the loans were transferred, the new loan owners could become "the Insured."[9]

AHM filed for chapter 11 bankruptcy protection on August 6, 2007 (the "Petition Date").  By the Petition Date, Triad admits that AHM had already sold many, if not all, of its loans to non-debtor–third-parties.[10]

---

[5] *See, e.g.*, Plan Trustee and Debtors' Ex. G, at 5 (Triad Guaranty, Inc.'s Form 10-K) ("A significant percentage of our new insurance written is underwritten pursuant to a delegated underwriting program. These programs permit certain mortgage lenders to determine whether mortgage loans meet our program guidelines and enable these lenders to commit us to issue mortgage insurance. . . . If an approved lender commits us to insure a mortgage loan, we may refuse to insure . . . that loan. . . .")

[6] *See* Plan Trustee and Debtors' Ex. A, at 1 [hereinafter Sample Master Policy] ("Application and Certificate—In order to obtain an extension of coverage under this Policy to a Loan, the Insured shall submit an application on forms furnished by or acceptable to the Company. . . . Approval of any application shall be at the discretion of the Company and shall be in the form of a Certificate which extends coverage pursuant to the terms and conditions of both this Policy and the Certificate.")

[7] *Id.*; *see also* Plan Trustee and Debtors' Ex. G, at 5 (Triad Guaranty, Inc.'s Form 10-K) ("If an approved lender commits us to insure a mortgage loan, we may refuse to insure . . . that loan. . . .")

[8] *See* Sample Master Policy § II.J. ("If a Loan or a majority participation in a Loan is sold, assigned, or transferred by the Insured, coverage under the Certificate will continue with respect to the Loan. . . .").

[9] *Id.* As detailed below, Triad admits that AHM transferred many, if not all, insured loans to non-debtors by the Petition Date. And Triad concedes that any relevant loans are held by the Liquidation Trust and other non debtor parties.  Therefore, whether Triad had notice of the transfers is irrelevant for present purposes. At the very least, these transferees would be *entitled* to the insurance proceeds, not the Debtors.

[10] *See* Pl.'s Am. Compl. ¶ 73, *and* Pl.'s Am. Opp'n Br., at 12; *cf.* Securitization Trusts' Supp. Mem., at 4 ("Triad concedes that each Certificate it issued is a separate insurance agreement. . . .  To make matters

AHM's chapter 11 plan (the "Plan") was confirmed on February 23, 2009 (the "Confirmation Date").[11]  By the Confirmation Date, the Debtors and the Plan Trustee state that the Debtors had "sold, transferred or turned-over all of their mortgage loans to third parties," and they also state that they are no longer insured by Triad.[12] In support, Defendants provide disclosure statements and other evidence.[13]

Whether the Debtors are insured is a point Triad avoids addressing.   Most notably, in Triad's Amended Complaint it failed to plead that the Debtors continued to qualify as current "owners" of the insured loans Triad wishes to rescind.[14]  But, as Triad notes, the Plan created a liquidation trust (the "Trust") and funneled AHM's remaining assets into that Trust.[15]  As such, the beneficiaries of the Trust ("Trust Beneficiaries"), although once creditors of the Debtors' estates, voluntarily exchanged their creditor status for the potential to receive distributions from the Trust.[16]

Also supported by documentary evidence, the Debtors' and Trust-Trustee's represent that the relevant assets are no longer held by the bankruptcy estate for the

---

worse, Triad concedes that, by the time of its lawsuit, AHM had sold the Loans insured by the Master Policies to entities like the Trusts." (citing Pl.'s Am. Compl. ¶ 30, 73)).

[11] D.I. 6627 [hereinafter Confirmation Order].

[12] *See, e.g.*, Plan Trustee and Debtors' Supp. Mem., at 6.

[13] *See, e.g., id.*

[14] Instead, Triad argues that the Trust holds insurance certificates Triad hopes to rescind, as detailed *infra*.

[15] D.I. 9694 [hereinafter Plan Trust].

[16] *Cf. Resorts Int'l, Inc. v. Price Waterhouse & Co., LLP.* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 169 (3d Cir. 2004) ("[Al]though [malpractice claims potentially could] affect the former creditors as *Litigation Trust beneficiaries*, they *no longer ha[d] a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims*." (emphasis supplied)) (finding court lacked jurisdiction over malpractice claims).

benefit of the Debtors or former creditors.[17]   And no party has provided reason to
believe otherwise.  Rather, Triad rests upon a conclusory averment that "*the Trusts* . . .
hold the Triad Mortgage Insurance Certificates which Triad seeks to rescind."[18]

In sum, all facts and evidence before this Court suggest that (1) to the extent
AHM once had an interest related to this action, the interest or entitlement thereto has
since been transferred to non-debtors; and (2) Triad's insurance obligations run to non-
debtors.[19]   That is, the undisputed facts clearly suggest that the reorganized debtor no
longer has a direct interest in insurance proceeds that relate to this dispute.

Since Triad's Complaint was filed, claims against the Debtors have been barred.
The deadline for non-governmental entities to submit proofs of claim in the Debtors'
bankruptcy cases lapsed on January 11, 2008.[20]   And the deadline for parties to file and
serve requests for administrative expense claims passed on January 5, 2011.[21]

B.      **Procedural Background**

        **1. The Complaint**

---

[17] *See, e.g.*, Plan Trustee and Debtors' Supp. Mem., at 6 ("The Debtors sold, transferred or turned-over all
of their mortgage loans to third parties during the pre- and postpetition period in the ordinary course of
business or pursuant to orders of this Court, long before Triad commenced this Adversary Proceeding."
(citing D.I. 6627 at 31–40 (disclosure statement)).

[18] *See* Pl.'s Am. Compl. ¶ 78.

[19] Based upon the pleadings, motions and evidence, it would be wholly insubstantial or frivolous to argue
that AHM possessed a remaining interest in the loans or Triad's insurance obligations.

[20] D.I. 1708.

[21] *See* Plan, Art. 12(A); Confirmation Order ¶ 8.

On September 4, 2009, Triad filed its Amended Complaint against a putative defensive-class in order avoid its insurance obligations against all current "owners" of certain AHM originated loans.  Triad believes that the rescission of a delegation agreement, through which Triad permitted AHM to perform a limited number of initial risk assessment functions,[22] will avoid its obligations against all individuals who currently own the loans.[23]  Thus, Triad argues that AHM committed various contractual breaches under non-bankruptcy law prior to filing for bankruptcy, permitting Triad to rescind all of Triad's outstanding insurance obligations against the defensive class.[24] Specifically, seeking equitable rescission against current "owners" of insured loans (rather than damages against AHM or AHM's pre-confirmation estate), Triad asserts state law claims of breach of duty, breach of contract, and fraud in the inducement (the "rescission claims").[25]

In substance, Triad merely wishes to rescind insurance obligations against a putative defensive-class consisting of all current owners of Triad-insured loans.  But, because Triad failed to aver that any party other than a non-debtor could qualify as a current "owner" of Triad-insured loans, these entities appear to be non-debtors.

### 2. The Motions to Dismiss

---

[22] *See supra* Factual Background.

[23] *See*, *e.g.*, Pl.'s Am. Compl. ¶ 10.

[24] *Id*.

[25] *See* Pl.'s Am. Compl. ¶ 105.

Shortly after Triad filed the Amended Complaint, AHM and various non-debtor entities (the "Defendants") filed motions to dismiss under Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Among other things, Defendants argue that the claims in Triad's Amended Complaint do not possess a "close nexus" to the bankruptcy plan or proceeding because AHM is no longer a current "owner" or insured entity under any of the loans relevant to Triad's rescission action.  Defendants support their arguments with specific allegations and evidence.

**3. Triad's Reply**

Triad soon replied (the "Reply").  Resting primarily on the pleadings, Triad refused to confront the Defendants' claim that AHM is no longer a current owner or insured entity.  Instead, Triad's Reply stated that this Court possesses subject-matter jurisdiction for the following three reasons:

- If a court (in any forum) rescinds the Master Policies and Insurance Certificates, that court might be required to return to some party (possibly AHM) the difference between (1) premiums paid to Triad and (2) an *unidentified* value of prior premium refunds and claims paid.[26]

  Separately, however, Triad concedes that prior claims paid could already exceed the value of premiums paid (rendering it impossible to provide a premium refund).[27]  And, although noting that premium refunds will be owed to other parties before AHM or beneficiaries of the former estate, Triad refuses to aver their value.

- Assuming there are net-premiums remaining, if a court (in any forum) rescinds the Master Policies, the net-premiums might qualify as property of the estate

---

[26] *See* Pl.'s Am. Opp'n Br., at 9–13, 15.

[27] *See* Pl.'s Am. Compl. ¶ 95.

under § 541.[28]   Therefore, this Court should enter a pre-emptive declaratory order concerning the ownership of net-premiums.

- If a court (in any forum) rescinds the Master Policies against the "current owners" of the loans, those third-parties may sue AHM for contribution and indemnification.[29]

As detailed below, each of Triad's arguments fail.

## LEGAL STANDARD

It is a plaintiff's burden to persuade a federal court that it has subject-matter jurisdiction to hear a dispute under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[30]   If the plaintiff clearly fails to meet its burden, the Court is bound to dismiss the plaintiff's action.[31]

Under Rule 12(b)(1), dismissal may be obtained through a successful facial or factual challenge.   When a challenge is facial, the Court will accept as true all well-pleaded allegations in the complaint and draw reasonable inferences in favor of the plaintiff.[32]   When a defendant asserts a factual attack, the Court will permit the plaintiff to respond with evidence to the defendant's factual challenge.   In doing so, it is incumbent upon the plaintiff to assert a measured response.   "If the plaintiff fails to meet and controvert the defendant's factual assertions . . ., then the . . . court [will be

---

[28] *See* Pl.'s Am. Opp'n Br., at 9–13, 15; *see also* Pl.'s Am. Compl. ¶ 105.

[29] *See* Pl.'s Am. Opp'n Br., at 15.

[30] *See, e.g., Common Cause of Pa. v. Pa.*, 558 F.3d 249, 257 (3d Cir. 2009).

[31] *See, e.g., Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).

[32] *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977).

forced to] determine whether it has subject matter jurisdiction based upon the factual context presented by the defendant."[33]

At bottom, "whether the challenge is facial or factual, the plaintiff bears the burden of persuasion" on each and every claim.[34]  A claim should be dismissed if it either (1) "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction" or (2) "is wholly insubstantial and frivolous."[35]

Here, Defendants have asserted factual and facial challenges to this Court's bankruptcy jurisdiction.  As detailed below, Defendants first assert a facial challenge regarding this Court's "arising in" or "arising under" jurisdiction.  Based upon the Amended Complaint, Defendants argue that Triad's action neither "arises in" a bankruptcy case nor "arises under" the Code.[36]  In their view, Triad's action did not "arise under" the Code because Triad's rescission action is solely based upon, and made available under, state law.[37]  In addition, Defendants argue that Triad's action does not "arise in" the bankruptcy because the state law claims, arising in prepetition conduct, would exist independently of the bankruptcy filing.

---

[33] *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982).

[34] *Henderson v. Nationwide Mut. Ins. Co.*, 169 F. Supp. 2d 365, 367 (citing *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)).

[35] *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09 (3d Cir. 1991) ("[D]ismissal is proper . . . when the claim [1] 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . [2] is wholly insubstantial and frivolous.'"); *see also Gould Electronics Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).

[36] *See, e.g.*, Plan Trustee and Debtors' Supp. Mem., at 13–14.

[37] *Id.*

Regarding the Court's related jurisdiction, the Defendants assert a mixed facial and factual challenge. Based upon the Master Contract, disclosure statements and prior proceedings, Defendants have produced unrebutted evidence suggesting that the Debtors sold, transferred or abandoned all relevant assets to non-debtors.[38]  On this issue Triad not only failed to provide more than a mere conclusory response, but also clearly appears to concede the same throughout the pleadings.[39]  According to Defendants, the Amended Complaint concedes the same. Specifically, the Amended Complaint itself states that Debtors have sold or transferred many, if not all, insured loans and suggests it is "The Trusts" (not the Debtors) who hold the Master Insurance Certificates that Triad wishes to rescind.[40]

The parties have fully briefed the jurisdictional issue and produced (or chosen not to produce) evidence.  As detailed below, based upon the pleadings and evidence, Triad has not persuaded the Court that jurisdiction is proper.

---

[38] *See, e.g.*, Debtors' and Plan Trustee's Supp. Mem., at 6.

[39] *See* Pl.'s Am. Opp'n Br., at 12 ("There is no evidentiary basis for the conclusion that premiums paid by AHMSI for coverage of *loans that AHM owned at time* would be refunded *to current owners of the loans*." (emphasis supplied)); *see also* Pl.'s Am. Compl. ¶ 73 ("Triad is informed and believes AHM has sold an unknown number of the over 29,000 loans. . . ."); *cf.* Securitization Trusts' Supp. Mem., at 4 ("Triad concedes that each Certificate it issued is a separate insurance agreement. . . .  To make matters worse, Triad concedes that, by the time of its lawsuit, AHM had sold the Loans insured by the Master Policies to entities like the Trusts." (citing Pl.'s Am. Compl. ¶ 30, 73)).

[40] *See* Pl.'s Am. Compl. ¶ 78.

## DISCUSSION

Pursuant to § 1334 and § 157 of the Judicial Code,[41] a bankruptcy court's subject-matter jurisdiction potentially extends to four types of title 11 matters: (1) cases "under" title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11.[42]  Triad would have the Court find that its post-confirmation action falls within one of the latter three types of proceedings.

## A. The Court Lacks "Arising-in" or "Arising-under" Jurisdiction.

Based upon the submitted pleadings and motions, the most hotly contested question in this adversary proceeding is whether the Court possesses "related to" jurisdiction, *infra*.  However, the parties also disagree whether this Court possesses either "arising under" jurisdiction or "arising in" jurisdiction.  Both will be considered.

### 1.    Arising-under Jurisdiction

The Court does not possess "arising under" jurisdiction.  Arising under jurisdiction, analogous to general federal question jurisdiction, empowers the bankruptcy courts to hear matters that turn upon a substantive bankruptcy right or invoke a cause of action provided by the Bankruptcy Code ("Code").[43]  Here, Triad has

---

[41] *See* 28 U.S.C. §§ 157, 1334.

[42] *See* 28 U.S.C. § 1334(b); *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006); *In re Combustion Eng'g Inc.*, 391 F.3d 190, 225 (3d Cir. 2004).

[43] *Stoe v. Flaherty*, 436 F.3d at 217 ("Whether a proceeding is a 'core' proceeding that 'arises under' title 11 depends upon whether the Bankruptcy Code creates the cause of action or provides the substantive right invoked." (citing *Halper v. Halper*, 164 F.3d 830, 836, 836-37 n. 7 (3d Cir.1999)).

presented two types of claims—non-bankruptcy rescission claims and requests for declaratory relief.

First the Court considers Triad's rescission claims. Triad's primary claims for rescission rely upon state-law causes of action for breach of contract, breach of duty and fraud.[44] These claims do not arise under the Code but instead turn solely upon state tort, contract and regulatory law on their face. As such, the claims neither invoke a substantive right under the Code, nor rely upon a cause of action provided in the Code. The rescission claims do not "arise under" the Code.

Secondly the Court considers Triad's request for declaratory relief. According to Triad, some (unidentified) parties remitted premiums to Triad over the past several years. Assuming the rescission claims prevail (in some forum), Triad speculates that the final arbiter might need to return those premiums to the debtor's estate under § 541 of the Code.[45] As such, Triad argues that a bankruptcy court should exercise jurisdiction because the court should be the one to determine whether any of the premiums would qualify as property of the estate—that this action arises under § 541.[46]

Putting to one side the fact that the Debtor's estate has technically ceased to exist after confirmation, Triad's speculation is insufficient on its face. Triad states that it *might* be required to refund the *difference* between (1) premium payments remitted to

---

[44] *See supra* Procedural Background.

[45] *See* Pl.'s Am. Compl. ¶¶ 100–105.

[46] *Id.*

Triad on behalf of unidentified entities—$38 million, according to Triad's Reply Brief[47]-- and (2) an unidentified dollar-value of both (a) prior refunds and (b) claims paid.[48] However, Triad fails to provide statements or facts suggesting that there might be a single cent available to be returned to the Former Debtors or beneficiaries of the former estate.  Instead, the Amended Complaint suggests to the contrary, including admitting that the value of claims paid may alone exceed the value of premiums refunded.[49]

A court should dismiss claims that clearly appear "immaterial and asserted for the sole purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous."[50] Consequently, Triad's claim for declaratory judgment is insufficient to persuade the Court that "arising under" jurisdiction is proper over Triad's rescission action—one which otherwise clearly arises under nonbankruptcy law.

### 2.    Arising In Jurisdiction

Although Triad does not argue otherwise, the Court pauses to note that this dispute did not "arise in" the bankruptcy.  A claim "arises in" a bankruptcy case if it is one that could only arise in the context of a bankruptcy case by its very nature, not its

---

[47] *See* Pl.'s Am. Opp'n Br., at 15.

[48] *See* Pl.'s Am. Compl. ¶¶ 101, 104, 105; Pl.'s Am. Opp'n Br., at 15 ("Triad's Rescission Action seeks to rescind the Master Policies and return the premiums collected thereon, net of prior premium refunds and claims paid, to the entitiles to which such premiums belong. Accordingly, the outcome of Triad's Rescission Action [might] alter AHM's rights in that, *if Triad [is] successful, AHM* may be *entitled* to almost $38 million in refunded premiums, *less prior premium refunds and claims paid*." (emphasis added)).

[49] *See* Pl.'s Am. Compl. ¶ 95.

[50] *Gould Electronics Inc.*, 220 F.3d at 178.

particular factual circumstance.[51]  The proceeding must owe its existence to the filing of

the bankruptcy petition.[52]

In the instant proceeding, Triad's state-law recission claims are based upon

conduct that occurred prior to AHM's bankruptcy case.  Even assuming the claims are

meritorious, they do not owe their existence to the filing of the bankruptcy petition, but

exist independently of it on their face.  Moreover, Triad's declaratory judgment claim is

insufficient to overcome the rescission claims' failings.  As noted above, Triad's claim

for declaratory relief is clearly alleged for the sole purpose of obtaining this Court's

jurisdiction, or wholly insubstantial and frivolous. Triad's claims clearly do not "arise

in" the bankruptcy case.[53]

## B. The Court Lacks Post-Confirmation "Related To" Jurisdiction.

The primary dispute before the Court is whether it possesses "related to"

jurisdiction over Triad's non-bankruptcy rescission claims.  In particular, Defendants

argue that the current action involves a non-debtor dispute that does not have a "close

---

[51] *Seven Fields Development Corp. v. Earnst Young LLP* (*In re Seven Fields Development Corp.*), 505 F.3d 237, 260 (3d Cir. 2007) (explaining post-confirmation "close nexus" test is unnecessary to consider where claims arose in bankruptcy case, but reiterating that '[[c]]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case.'" (quoting *Stoe*, 436 F.3d at 218)).

[52] *Id.*

[53] In its recent opinion in *Stern v. Marshall*, the Supreme Court held that, for purposes of the exercise of judicial power (under the statute – not the Constitution), "arising under" and "arising in " jurisdiction is defined by reference to the definition of "core proceedings" in 28 U.S.C. § 157(b).  *Burtch v. Huston* (*In re USDigital, Inc.*), 461 B.R. 276, 283 (Bankr. D. Del. 2011) (citing *Stern v. Marshall*, 131 S. Ct. 2594, 2604-05 (2011)).  They are in effect interchangeable.  Triad's claims are neither enumerated nor non-enumerated core proceedings under Section 157(b) of the Judicial Code.  Thus, to the extent *Stern v. Marshall* is applicable in this context, Triad's claims do not "arise under" nor "arise in" this case.

nexus" to the bankruptcy plan or proceeding, and, thus, this Court cannot exercise "related to" jurisdiction over Triad's insurance rescission claims.[54]

Triad disagrees—but on different grounds. Primarily, Triad argues that (1) the "close nexus" test is not applicable, and (2) even if it were applicable, the "close nexus" test would be satisfied because the Confirmation Order purportedly retained jurisdiction over similar disputes.[55] Assuming a court ultimately rescinds Triad's insurance obligations against non-debtors, Triad also speculates that those non-debtors might turn around and file third-party complaints against the former Debtors.[56] Therefore, Triad argues, the action is "related to" the former Debtors' bankruptcy case. On each point Triad is incorrect.

### 1. The General Scope of Related to Jurisdiction.

On the threshold, the parties disagree about the scope and application of "related to" jurisdiction. As noted above, Triad argues that it is only necessary for the Plan to state that the bankruptcy court retains jurisdiction. However, Defendants correctly argue that more is needed under the circumstances. Bankruptcy jurisdiction is proscribed by statute; neither the parties nor the court can expand upon it by merely

---

[54] *See, e.g.*, Plan Trustee and Debtors' Supp. Mem., at 12.

[55] *See, e.g.*, Pl.'s Am. Opp'n Br., at 14 ("[B]ecause Triad's rescission action is specifically enumerated in the Confirmation Order, bankruptcy court jurisdiction . . . would not raise the specter of 'unending jurisdiction' over future adversary proceedings." (internal marks omitted)).

[56] *Cf.* Pl.'s Am. Opp'n Br., at 15. As a back-stop, Triad reiterates that a premium refund, less prior refunds and claims paid, may ultimately benefit the estate. But this argument is clearly immaterial and made for the sole purpose of obtaining jurisdiction or wholly insubstantial and frivolous, as detailed *supra* Discussion, Part I.

providing so in the plan or confirmation order.[57] And so the question remains—is the action "related to" the Debtors' bankruptcy case within the meaning of the Judicial Code?

We begin with the *Pacor* test. In this district, the outer-bounds of the bankruptcy court's "related to" jurisdiction are defined by *Pacor v. Higgins* and its progeny.[58] In *Pacor*, the Third Circuit Court of Appeals explained that an action is "related to" a bankruptcy proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[59] Moreover, the *Pacor* Court explained that an "action is related to bankruptcy if the outcome [1] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and . . . [2] in any way impacts upon the handling and administration of the bankruptcy estate."[60] This has become known as the *Pacor* test, which defines the broad ambit of "related to" jurisdiction in action filed *before confirmation* of a debtor's chapter 11 plan.

Despite some initial uncertainty, later decisions from the Third Circuit Court of Appeals confirmed that the *Pacor* test requires the conceivability of a *direct* impact upon

---

[57] *Resorts Int'l, Inc. v. Price Waterhouse & Co., LLP.* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 161 (3d Cir. 2004) ("Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction. But neither the bankruptcy court nor the parties can write their own jurisdictional ticket. Subject matter jurisdiction 'cannot be conferred by consent' of the parties. Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization. Similarly, if a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order. . . . If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant." (internal citations omitted)).

[58] *Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1985) (overruled on other grounds by *Things Remembered Inc. v. Petrarca*, 516 U.S. 124 (1995)).

[59] *Id.* at 994.

[60] *Id.* at 994.

the estate.[61]    Thus, if it is impossible for a collateral dispute between third-parties to directly impact the estate, the bankruptcy court will lack "related to" jurisdiction.    The bankruptcy court might lack jurisdiction, for instance, if the plaintiff merely speculates that a third-party defendant might bring a separate common-law indemnification claim against the debtor in the future.[62]

At this point, we must pause to reject one argument.    Triad *speculates* that, as a consequence of its rescission action, third-parties *might* file suit against the Debtor for common law contribution or indemnification.[63]    Yet, the Defendants represent that no party has asserted such claims and, because it appears that any such claims likely will be barred or enjoined, a separate action will need to be brought before the third-party claims could have any impact upon the administration of the former estate.[64]    Because indemnification and contribution claims against AHM have not yet accrued and would

---

[61] *See In re W.R. Grace & Co.*, 591 F.3d 164, 168, 175 (3d Cir. 2009).

[62] *Id.* There is some suggestion that, if the third party defendant filed a proof of claim in the debtor's bankruptcy for statutory or contractual indemnification, such that the action's outcome could *conceivably* have a *direct* impact upon the debtor's estate, there is some suggestion that the bankruptcy court may possess "related to" jurisdiction—at least pre-confirmation. But this issue is not before the Court.

[63] In actuality, the plaintiff merely concludes that "[t]he outcome of Triad's Rescission Action could alter AHM's liabilities as well," *see* Pl.'s. Am. Opp'n Br., at 15, and fails to confront the defendants' argument that the debtor's liabilities cannot be affected, since the relevant bar dates have passed. Rather, the plaintiff merely states: "Crying prejudice, Defendants bemoan the fact that the relevant bar dates in AHM's chapter 11 case have passed, preventing them from filing claims asserting damages against AHM in the event Triad is successful in rescinding the Master Policies. This argument makes little sense if the outcome of Triad's Rescission Action could in no way alter AHM's liabilities," *see* Pl.'s. Am. Opp'n Br., at 15.

[64] *See* Plan Trustee and Debtors' Supp. Mem., at 16 (arguing third party claims would be barred or enjoined), *and* Securitization Trusts' Supp. Mem., at 9 (arguing if a separate indemnification or contribution action is required before a claim will directly affect the debtor, the court may not have subject-matter jurisdiction).

require another lawsuit before they could impact beneficiaries of the former estate,[65] Triad's argument is simply too speculative.

And with that, we continue on. Why? Notwithstanding the outstanding breadth of *pre-confirmation* "related to" jurisdiction, a claimant must surmount additional hurdles in the post-confirmation context.[66]

### 2. Post-Confirmation: The "Close Nexus" Test.

After confirmation, claimants must satisfy additional hurdles established by the Third Circuit's *Resorts* decision;[67] the test for "related to" jurisdiction becomes more stringent if the plaintiff *files* its action after the confirmation date.[68]

In the post-confirmation context, the plaintiff must persuade the court that the claims have a "close nexus" to the bankruptcy plan or proceeding.[69] Here, despite agreeing that this action was filed after the Confirmation Date, the parties disagree about whether the "close nexus" test applies. In short, it does.

---

[65] *Cf. In re Federal–Mogul Global, Inc.,* 300 F.3d 368 (3d Cir. 2002), *and In re Combustion Eng'g, Inc.,* 391 F.3d 190, 227 (3d Cir. 2004) ("Because the potential indemnification and contribution claims against Federal–Mogul had not yet accrued and would require another lawsuit before they could affect Federal–Mogul's bankruptcy estate, we concluded the district court correctly held it lacked subject matter jurisdiction.")).

[66] *In re Resorts Int'l., Inc.,* 372 F.3d 154, 161 (3d Cir. 2004).

[67] *In re Resorts Int'l., Inc.,* 372 F.3d at 161.

[68] *Id.; Seven Fields Dev. Corp. v. Ernst Young LLP* (*In re Seven Fields Dev. Corp.*), 505 F.3d 237, 264–65 (3d Cir. 2007) (clarifying Resorts; "we are satisfied that the 'close nexus' test is applicable to 'related to' jurisdiction over any claim or cause of action filed post-confirmation, regardless of when the conduct giving rise to the claim or cause of action occurred.").

[69] *In re Seven Fields Dev. Corp.,* 505 F.3d at 264–65 ("After our present consideration of *Resorts,* we are satisfied that the 'close nexus' test is applicable to 'related to' jurisdiction over any claim or cause of action filed post-confirmation, regardless of when the conduct giving rise to the claim or cause of action occurred.")

*a) When is the test triggered?* The "close nexus" test must be satisfied in any action filed after the court confirms a debtor's chapter 11 plan.[70]  Although it appears Congress intended bankruptcy courts to retain jurisdiction over some post-confirmation disputes,[71] the *Resorts* Court noted that a literal application of the *Pacor* test becomes problematic because plan confirmation has the general effect of closing up the bankruptcy estate.[72]  Thus, in *Resorts*, the Third Circuit Court of Appeals established a test to ensure that the exercise of post-confirmation "related to" jurisdiction is confined to those proceedings that impact an aspect integral to the bankruptcy process.[73]  If an action is filed after the confirmation date, the bankruptcy court's "related to" jurisdiction does not extend beyond those claims or proceedings that possess a "close nexus" to the bankruptcy plan or proceeding.[74]

*b) What is the required "close nexus"?* Ultimately, the "close nexus" test was intended to limit jurisdiction to those proceedings that are "integral to the restructuring process."[75]  Thus, in establishing the binding post-confirmation test, the *Resorts* Court began by reiterating that "'[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or

---

[70] *Id.*

[71] *Cf. In re Resorts Int'l*, 372 F.3d at 165 ("Post-confirmation jurisdiction is assumed by statute and rule.").

[72] *See id.*

[73] *Cf. In re Resorts Int'l, Inc.*, 372 F.3d at 167 ("At the post-confirmation stage, *the claim must affect an integral aspect of the bankruptcy process*—there must be a close nexus to the bankruptcy plan or proceeding." (emphasis supplied)).

[74] *Id.*

[75] *Id.*

negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.'"[76]    However, the Court also explained that post-confirmation "related to" jurisdiction is limited; it "'does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case.'"[77]

"[T]he inquiry is multifaceted."[78] The matter before the *Resorts* Court demonstrates in which circumstances a "close nexus" will not be found.  In *Resorts*, the Court asked whether jurisdiction was proper over a post-confirmation state-law action by the trustee of a post-confirmation trust against a non-debtor accounting firm.  The Court characterized the action as a dispute among non-debtors and concluded that the "close nexus" for "related to" jurisdiction was lacking, basing its decision on multiple facets of the proceeding:

- Because the action was filed after plan confirmation, the trust-trustee's malpractice claim could no longer affect the bankruptcy estate.[79]

- Because the debtor was not a party to the action, the malpractice action could have "only incidental effect on the reorganized debtor."[80]

---

[76] *Id.* at 164 (citing *Pacor*, 743 F.2d at 994).

[77] *Id.* at 164.

[78] *In re Shenango Group Inc.*, 501 F.3d 338, 344 (3d Cir. 2007).

[79] *See In re Resorts Int'l., Inc.*, 372 F.3d at 169, 169–171 ("[W]e believe this proceeding lacks a close nexus to the bankruptcy plan or proceeding and affects only matters collateral to the bankruptcy process. The resolution of these malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; though it will affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims; and as stated, the jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157. For these reasons, the malpractice claims here lack the requisite close nexus to be within the Bankruptcy Court's 'related to' jurisdiction post-confirmation."); *see also In re Shenango Group Inc.*, 501 F.3d at 343–44.

- The malpractice claim did not affect the debtor's creditors, because the former creditors were no longer creditors of the bankruptcy estate but beneficiaries of the plan trust. They "exchanged their creditor status to attain rights to the [trust's contingent assets]."[81]

In addition, the Court noted that (1) the bankruptcy court retained jurisdiction over the matter; (2) the trust-trustee's malpractice claim could not interfere with the implementation of the reorganization plan or liquidation trust; and (3) the resolution of the trust-trustee's primary claims did not depend upon the interpretation or construction of a plan provision or incorporated trust agreement.[82]  There was not a sufficiently "close nexus" between the trust-trustee's claims and the bankruptcy "plan or proceeding."[83]

### 3. Application to Triad's Defensive Class Action Claims.

Here, Triad's action was filed after the Confirmation Date.  Thus, Triad bears the burden of persuading the Court that the claims have a sufficiently "close nexus."[84]  But, Triad has failed to do so.

Triad's action is deficient for reasons similar to those in *Resorts*.  Triad asks the Court to hear a dispute between Triad and current "owners" of Triad-insured loans regarding whether Triad may avoid its liabilities against those owners.  Based upon the pleadings, those current "owners" appear to be non-debtors. Moreover, like the claims

---

[80] *Id.*

[81] *Id.*

[82] *See id.*

[83] *Id.*

[84] *Cf. In re Resorts Int'l, Inc.*, 372 F.3d at 167.

considered by the *Resorts* Court, Triad's rescission claims do not appear to be "integral to the restructuring process" but instead "lack[ ] a close nexus to the bankruptcy plan or proceeding" and "affect[] only matters collateral to the bankruptcy process."[85]

*a) Triad's action will not impact the estate.*  Confirmation of the Plan terminated the Debtors' estate. As such, there is technically no longer an estate to impact.

*b) Triad's action will not impact the Debtors more than incidentally.*  Triad's class action claims seek equitable rescission against current "owners" of Triad-insured loans. According to the pleadings, however, it only appears to be non-debtors who would be impacted by Triad's private mortgage insurance.  It would be too speculative to conclude that the Debtors may be impacted more than incidentally.

*c) Triad's action will not impact the handling of the Debtors' former estate for the benefit of other creditors.*  According to Triad, the Trusts currently possess the Master Insurance Certificates.  However, the Trust Beneficiaries are no longer creditors of the Debtors' estate.  The Trust Beneficiaries exchanged their creditor status for the potential to receive distributions from the Trust.  Since not a single party to this action suggests otherwise, it would be too speculative to conclude that Triad's action will impact the handling of the Debtors' former estate for the benefit of *other creditors*.

*d) Triad's action will not impact the implementation of the Plan or incorporated Trust.*  There are no pleadings or evidence suggesting that Triad's action will impact the implementation of the Plan or incorporated Trust.   It appears that the Trust

---

[85] *Cf. In re Resorts Int'l, Inc.*, 372 F.3d at 169.

Beneficiaries exchanged their creditor status with the knowledge that Triad may bring rescission claims against insured parties.  And, for their part, the Trust Beneficiaries do not argue that they were misled regarding the contingent nature of the Trust's assets or liabilities. Without more, it would be too speculative to conclude otherwise.

e) *Triad's action does not turn upon the interpretation or construction of a provision of the Plan or Trust.*  Whether Triad can rescind the contract will not be determined by reference to the Debtors' plan or incorporated trust agreement.  Instead, Triad's claims arise under state law; although the Plan and Trust agreement might provide the bare context of the rescission action, this bare factual nexus is insufficient to confer bankruptcy jurisdiction.

Accordingly, as in *Resorts,* Triad's rescission action will not impact the Debtors' estate, the Debtors (more than incidentally), the implementation of the Plan and/or the incorporated Plan Trust, nor AHM's former creditors (as opposed to Trust beneficiaries).  Moreover, the outcome of Triad's rescission claims does not turn upon the interpretation or construction of the plan or incorporated trust agreement.  Triad has not persuaded the Court that the exercise of post-confirmation "related to" jurisdiction is proper.

## CONCLUSION

The Court finds Triad has not met its burden to demonstrate that subject-matter jurisdiction is proper under title 28 of the Judicial Code.  Specifically, Triad has failed to persuade this Court that its post-confirmation class-action to rescind the contracts (1)

possesses a sufficiently "close nexus" to the plan or proceeding; (2) invokes a substantive right or cause of action created under the Code; or (3) by its nature, not its factual circumstance, could arise only in the context of a bankruptcy case.  As such, this Court will grant Defendants' motions to dismiss for lack of subject-matter jurisdiction. An order will be issued.